IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SYNITA HUDGINS,

    Plaintiff,

       v.

MHM HEALTH PROFESSIONALS,
LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-4177-TWT

## OPINION AND ORDER

This is a retaliatory discharge action. It is before the Court on the Defendants Georgia Department of Corrections, J. Randall Sauls, Alan Watson, and Tyrone Oliver (collectively, the "GDC Defendants")'s Motion to Dismiss the Amended Complaint [Doc. 14] and the Defendants MHM Health Professionals, LLC and MHM Correctional Services, LLC (collectively, the "MHM Defendants")'s Motion to Dismiss the Amended Complaint [Doc. 15]. For the reasons set forth below, the GDC Defendants' Motion to Dismiss the Plaintiff's Amended Complaint [Doc. 14] is GRANTED in part and DENIED as moot in part; the MHM Defendants' Motion to Dismiss the Plaintiff's Amended Complaint [Doc. 15] is GRANTED; and the GDC and MHM Defendants' Motions to Dismiss the Original Complaint [Docs. 2, 3] are DENIED as moot.

# I.   Background[1]

This case arises from the termination of the Plaintiff Synita Hudgins' employment with the MHM Defendants at the direction of the Defendant Georgia Department of Corrections. (Am. Compl. ¶ 58). Beginning in 2019, Dr. Hudgins worked as a clinical psychologist at the Hays State Prison for MHM through its contract with GDC. (*Id.* ¶¶ 32–34). In May 2022, two incarcerated patients of Dr. Hudgins informed her that they were receiving inadequate medical treatment for certain serious medical conditions from which they suffered. (*Id.* ¶ 59). Dr. Hudgins proceeded to send an email regarding their complaints to two GDC officials, including the Defendant J. Randall Sauls, the Assistant Commissioner of the Health Services Division. (*Id.* ¶¶ 5, 64; Doc. 1-1, Ex. A). Sauls thereafter reported the email to GDC personnel and MHM as a potential HIPAA violation for improperly disclosing the protected health information of patients at the prison. (Am. Compl. ¶ 74). Though Dr. Hudgins maintains her email did not violate HIPAA, the GDC ultimately directed MHM to terminate her employment, which it did on August 12, 2022. (*Id.* ¶¶ 75, 81–82, 87). Dr. Hudgins filed the present action in Fulton County Superior Court on August 11, 2023, bringing claims of violation of the Georgia Whistleblower

---

[1] The Court accepts the facts as alleged in the Amended Complaint as true for purposes of the present Motions to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

Protection Act and First Amendment Retaliation, and seeking injunctive relief under those claims. The Defendants removed this action to this Court on September 15, and they now move to dismiss the claims against them.

## II.      Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S.

89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III.    Discussion

The Defendants move to dismiss all of the Plaintiff's claims, arguing that (1) her Georgia Whistleblower Protection Act claim lacks an alleged disclosure of a legal violation, (2) her First Amendment claims do not implicate private speech made on a matter of public concern, and (3) her injunctive relief claim fails standing alone. (Br. in Supp. of GDC Defs.' Mot. to Dismiss, at 7–8; Br. in Supp. of MHM Defs.' Mot. to Dismiss, at 2). In response, the Plaintiff contends that she disclosed Eighth and Fourteenth Amendment violations in her email to GDC officials and that she spoke as a private citizen on a matter of public concern when she sent it. (Pl.'s Resp. Br. in Opp'n to GDC Defs.' Mot. to Dismiss, at 5, 16; Pl.'s Resp. Br. in Opp'n to MHM Defs.' Mot. to Dismiss, at 19–20). The Court begins with the Plaintiff's constitutional claims.

Federal courts employ a four-part analysis in assessing whether a state actor discharged an employee in violation of her First Amendment free speech rights. *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013). Only the first prong is at issue here, which asks "whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern." *Id.* (quotation marks and citation omitted). Two inquiries generally bear on the analysis under the first prong: (1) the classification of the plaintiff's speech as that of a public employee or a private citizen, and (2) the content of

the plaintiff's speech as a private matter or of public concern. *See id.* at 1168–69. These inquiries are questions of law for the court to decide. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 618 (11th Cir. 2015).

Several factors are relevant in assessing whether a plaintiff spoke as a public employee or a private citizen, including "whether the speech occurs in the workplace" and "whether the speech concerns the subject matter of the employee's job." *Abdur-Rahman v. Walker*, 567 F.3d 1278, 1282 (11th Cir. 2009); *see also Fernandez v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 898 F.3d 1324, 1332 (11th Cir. 2018) ("Our cases have identified, among others, these considerations as relevant in determining whether a public employee spoke pursuant to his official duties: (1) speaking with the objective of advancing official duties; (2) harnessing workplace resources; (3) projecting official authority; (4) heeding official directives; and (5) observing formal workplace hierarchies." (citations omitted)). Speech made concerning an employee's job duties typically "owes its existence to a public employee's professional responsibilities." *Abdur-Rahman*, 567 F.3d at 1283 (citation omitted). But the principal question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240–41 (2014) (finding a community college program director's sworn testimony at a former program employee's corruption trial was private speech protected by the First Amendment).

In assessing whether a plaintiff spoke on a matter of public concern, the inquiry focuses on the "content, form, and context" of the statement. *Booth v. Pasco Cnty., Fla.*, 757 F.3d 1198, 1214 (11th Cir. 2014) (citation omitted). "Speech is considered to deal with a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *United States v. Fleury*, 20 F.4th 1353, 1364 (11th Cir. 2021) (quotation marks and citation omitted).

Against this legal backdrop, the Court concludes that the Plaintiff has failed to plead a plausible First Amendment claim against the Defendants because her email cannot be fairly characterized as constituting private speech on a matter of public concern. Beginning with whether she spoke as a public employee or private citizen, her speech here occurred in the workplace, as she sent the email to two GDC officials. And the email undoubtedly owed its existence to her professional responsibilities at the state prison. The Plaintiff emphasizes that she had no duty to report alleged constitutional violations or mistreatment of the incarcerated individuals. (Pl.'s Resp. Br. in Opp'n to GDC Defs.' Mot. to Dismiss, at 20–21 (citing Am. Compl. ¶¶ 69–73)). But that she "had no affirmative duty to go outside the formal chain of command and directly report [the alleged mistreatment to GDC officials] does not convert

6

[her] speech to that of a private citizen." *Akins v. Fulton Cnty., Ga.*, 278 F.
App'x 964, 971 (11th Cir. 2008).

The Court finds the Plaintiff's speech akin to that of the high school
principal in *D'Angelo v. School Board of Polk County, Florida*, 497 F.3d 1203,
1210 (11th Cir. 2007), whose seeking a charter status on behalf of the school
constituted speech as a public employee, despite his framing of his pursuit of
charter status as his "moral obligations as a human being and not his
responsibilities as a principal." Here, though the Plaintiff clearly felt morally
obligated to report the alleged mistreatment to the GDC, she nonetheless sent
her email primarily in her role as an employee as opposed to in her role as a
citizen. *See id.* at 1209. True, the Plaintiff escalated her concerns without an
official directive to GDC officials in this instance, and not to the prison's
administrators or her supervisors at MHM within her formal workplace
hierarchy. (Pl.'s Resp. Br. in Opp'n to GDC Defs.' Mot. to Dismiss, at 18). But
these factors alone are insufficient to establish speech as a private citizen as a
matter of law. *See Millspaugh v. Cobb Cnty. Fire & Emergency Servs.*, 2022
WL 17101337, at *8 (11th Cir. Nov. 22, 2022). Under these circumstances, the
Court cannot conclude that the Plaintiff sent the email as a private citizen.

Turning to the content of the speech, the Plaintiff attempts to frame her
email as "disclos[ing] multiple potential Eighth Amendment violations by GDC
security personnel, including deprivations of necessary medical care and

multi-day deprivations of food and water." (Pl.'s Resp. Br. in Opp'n to GDC Defs.' Mot. to Dismiss, at 19). Though the adequacy of medical treatment and bodily sustenance for incarcerated individuals is certainly a matter of public concern, the Court does not read her email as raising systemic issues of the sort that would constitute a "matter of political, social, or other concern to the community" or the "subject of legitimate news interest." *Fleury*, 20 F.4th at 1364; (*see also* Compl., Doc. 1-1, Ex. A). Nor does past news coverage of inadequate medical treatment in Georgia prisons inherently dictate the newsworthiness of the email's contents. (Am. Compl. ¶ 52).

The Plaintiff's email here is distinguishable from the dentist's letter in *Camp v. Correctional Medical Services, Inc.*, 668 F. Supp. 2d 1338, 1355 (M.D. Ala. 2009), where the "main thrust" of the speech pertained to "the health of Alabama inmates and the public at large," including shortcomings in supply, equipment, and personnel, and unsanitary and brutal practices with incarcerated patients. Rather, the content of the email focuses specifically on the need for the provision of medical care to two of her patients. Finally, she directed her speech to a very "limited audience," which favors a finding of non-public concern. *Anderson v. Burke Cnty., Ga.*, 239 F.3d 1216, 1221 (11th Cir. 2001). For these reasons, the Court also cannot conclude that the Plaintiff's email detailed a matter of public concern.

Therefore, the Plaintiff has failed to plead a plausible First Amendment retaliation claim against the Defendants, and Counts II and III of the Amended Complaint should be dismissed. Having found that the constitutional claims fail as a matter of law, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### IV.    Conclusion

For the reasons set forth above, the GDC Defendants' Motion to Dismiss the Plaintiff's Amended Complaint [Doc. 14] is GRANTED in part and DENIED as moot in part; the MHM Defendants' Motion to Dismiss the Plaintiff's Amended Complaint [Doc. 15] is GRANTED; and the GDC and MHM Defendants' Motions to Dismiss the Original Complaint [Docs. 2, 3] are DENIED as moot. The GDC Defendants' Motion to Dismiss the Plaintiff's Amended Complaint [Doc. 14] is GRANTED as to Counts II and III of the Amended Complaint, and it is DENIED as moot as to Counts I and IV. The Clerk is DIRECTED to remand this case to the Superior Court of Fulton County.

SO ORDERED, this ___11th___ day of March, 2024.

THOMAS W. THRASH, JR.
United States District Judge